Coös,
May 1, 1923.

## MICHAEL MOFFETT v. BERLIN WATER COMPANY.

One who has granted an easement upon his own land is not bound to do more than to abstain from acts inconsistent with its proper enjoyment, unless there is a covenant, either by express terms or by implication from the language of the grant.

Certain evidence held insufficient to establish a practical construction of a deed creating an easement to take water from a spring or that any duty had been assumed in reference thereto by the owner of the servient tenement.

CASE, for negligently managing a spring and aqueduct, failure to repair the same and refusal to furnish plaintiff water therefrom. Trial by jury. Transferred by *Allen*, J., upon the plaintiff's exceptions to a ruling that his declaration was a plea of the case for negligence, and to the granting of the defendant's motion for a nonsuit.

The plaintiff on August 17, 1904, acquired by deed from one Wilson a dwelling-house and lot in Berlin. By the same deed he was granted "the right to take water for domestic use in the . . . house . . . by and through the pipes now and lately used for that purpose as they now exist . . . for domestic purposes." It appears to be conceded that Wilson then owned the spring, which later came to be owned by the Green Aqueduct company. The spring was situated some 400 feet from the house, and supplied it and several other houses in the immediate vicinity with water for domestic purposes. None of the other house-owners had easements in the spring or pipes, and all except the plaintiff paid water rentals. In about 1910, the defendant company acquired the Green company's title to the spring, subject to the plaintiff's right under his deed, and continued to supply therefrom the water takers connected therewith on the same terms as the Green company had done. From time to time, takers on this system for one reason or another were transferred to the larger system of the defendant which supplied the city and citizens of Berlin generally. At the time of the conduct complained of, in the winter of 1920, the takers on the Green system had been reduced to the plaintiff and one or two others. It does not appear what prior attention, if any, the defendant or its predecessor had ever given to the system except that in about 1915, on being notified by the plaintiff that the spring had frozen up, a representative of the defendant came and thawed

it out with an electric torch. It appeared that such action of the defendant was necessary to supply its paying customers, and no charge was made therefor.

The plaintiff's evidence tends to show that during a very cold time in February, 1920, the water in the pipes froze, that he at once notified the defendant's manager, who replied that he "didn't know whether he could do anything about it;" that about eight days later the defendant's representative came up, but couldn't get any connection through, as the pipes in the aqueduct leading from the spring were frozen up and burst; that the representative then, or later, told him that they "had . . . a lot . . . froze up" and he would have to "wait my [his] turn," but that a neighbor "who froze up" about the same time was promptly thawed out; that the defendant made no further attempt to repair the system during the winter, and later refused to connect the plaintiff's house with the spring; that during the following spring, because the water from the system oozed out upon the top of the ground and flooded the land of others, the defendant cut off and plugged the pipes, but left them in the ground; that these were the same pipes that were there at the date of the plaintiff's deed; that all of the remaining takers from the Green system, including the plaintiff, were temporarily, and later permanently, connected with the city system and have since paid the regular rates. Further facts appear in the opinion.

*Ovide J. Coulombe* and *Crawford D. Hening* (*Mr. Hening* orally), for the plaintiff.

*Sullivan & Daley* (*Mr. Sullivan* orally), for the defendant.

Snow, J. One "who has granted an easement upon his own land is not bound to do more than to abstain from acts inconsistent with its proper enjoyment, unless there is a covenant, either by express terms, or by implication from the language of the grant." *Bartlett v. Peaslee,* 20 N. H. 547, 549; *Cole v. Company,* 79 N. H. 187, 188. The plaintiff concedes the correctness of the foregoing principle when applied to the construction of the deed standing alone, but contends that it can be found from the evidence that prior to the wrong complained of, (1) the defendant had by practical construction of the plaintiff's deed defined and fixed its obligation thereunder to include the thawing out of the pipes upon reasonable notice from the plaintiff, or (2) had by its conduct independent of

the deed assumed the performance of such duty. The evidence upon which the plaintiff relies for proof of such practical construction or assumption of duty was his testimony that in about 1915, the defendant was "maintaining" the spring and that upon notice from him "they come right up and thawed it out, . . . just hitched on the electric torch and thawed it right out." The evidence has no probative value to establish such a practical construction or assumption of duty. Defendant's conduct disclosed no purpose imputable to it except to perform its duties to its patrons. It owed a duty at all times to the takers on the system, to whom it was under contract to supply water, to maintain the system in operation. It owed no such duty to the plaintiff. The fact that it thawed out the frozen pipes in 1915, without which its customers could not have received water, had no tendency to show that such act was an acknowledgment of a duty owed or assumed in behalf of anyone else. The facts that information of the frozen condition of the spring was received from the plaintiff and that incidentally he was benefited by the remedy applied add nothing to the probative value of the evidence. The most that could be said is that the defendant's act was consistent with an obligation to the plaintiff.

The plaintiff further contends that defendant's duty to thaw out the pipes could be found from the statements of defendant's manager upon notice of the freeze-up of 1920 that "he didn't know whether he could do anything about it" and the later statement that the plaintiff would have to wait his turn. It is argued that these statements in the absence of an express refusal to act had a tendency to mislead the plaintiff into reliance upon action by the defendant, and therefore amounted to a direct assumption of duty on its part, in the performance of which it should have used due care. The negative statement by defendant's manager that "he didn't know whether he could do anything about it" would not support a finding that the defendant assumed any duty. The further statement that the plaintiff would have to wait his turn was made eight days later, after the defendant's representative had tried to thaw out the pipes for the plaintiff and had failed to get a connection through because the pipes were frozen up and burst. There is no evidence that the defendant was negligent in the performance of this task. When the pipes thawed out the following spring, no water ran to the plaintiff's house. It is apparent that at the time the statement relied upon was made, nothing further could have been done by the defendant to remedy the condition

except to reconnect the plaintiff's house with the spring by laying new pipes. Assumption of the duty to do this could not be inferred from the statement of defendant's representative, called to thaw out the pipes, that the plaintiff would "have to wait my [his] turn." It follows from the foregoing that it cannot be found that the defendant owed the plaintiff any duty upon which the alleged negligence of the defendant could be predicated.

It is equally clear that there was no evidence from which it could be found that there was actionable interference with the plaintiff's right, even if the plaintiff's declaration were broad enough to include recovery for such a wrong. Assuming that the plaintiff in 1920 had the right to dig up and to restore the pipes from the spring to his house, his testimony of his understanding that he had no such rights based upon the failure of the defendant's manager to advise him in regard thereto is not evidence from which it could be found that the defendant refused him the right. The defendant's subsequent refusal to remedy the condition was not a denial of plaintiff's right to repair the pipe and to restore the service to his house.

The act of the defendants in cutting off the pipes and plugging them might have constituted a technical interference with the plaintiff's right, and entitled him to recover damages therefor in an appropriate action if it did not conclusively appear that the defendant's act was within its legal right. The plaintiff testified that when the pipes thawed out in the spring, the water did not run to his house because the pipes were split between it and the spring, so that the water came out of the ground and flooded back upon a neighbor's house and that the defendant thereupon caused it to be cut off and plugged. When interrogated as to his plan to restore the system himself, the plaintiff stated that he "was n't going to do anything." The pipe was the property of the defendant subject only to the plaintiff's easement to utilize it as a conduit to convey water from the spring to his house. The defendant had no occasion to repair the pipe, and was responsible to third parties for the negligent maintenance of the system. The pipe was cut and plugged, not to prevent the water running to the plaintiff's house, but to prevent its creating a nuisance. It thus conclusively appears that defendant's act was a reasonable and justifiable expedient in the rightful management of its property.

*Exceptions overruled.*

PLUMMER, J., was absent: the others concurred.